UNITED STATES DISTRICT COURT
MDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NICOLE GAFFNEY,**
**o/b/o J.K.,**

    **Plaintiff,**

v.                                              **Case No.: 8:18-cv-1703-T-AAS**

**ANDREW SAUL,**
**Commissioner of Social Security,**[1]

    **Defendant.**
_____/

## ORDER

Nicole Gaffney, on behalf of her minor child, J.K., seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying J.K.'s claim for Child's Supplemental Security Income Disability Benefits (SSID) under the Social Security Act, 42 U.S.C. § 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the joint memorandum submitted by the parties, the Commissioner's decision is **AFFIRMED**.

---

[1] On September 17, 2019 Andrew Saul became the Commissioner of the Social Security Administration. Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit due to the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. PROCEDURAL HISTORY

On April 14, 2015, Ms. Gaffney applied for SSI on behalf of J.K. due to an alleged disability beginning April 10, 2015. (Tr. 196). Disability examiners denied J.K.'s application at the initial and reconsideration levels. (Tr. 67–88). An administrative law judge (ALJ) held a hearing, and on September 5, 2017, the ALJ issued a decision finding J.K. not disabled. (Tr. 7–29). The Appeals Council denied Ms. Gaffney's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5, 152). Ms. Gaffney now seeks review of the Commissioner's final decision in this court. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Statement of the Case

Ms. Gaffney is the mother of the child claimant J.K. (Tr. 208). J.K. was born in 2015 and is four years old. (Tr. 156). Ms. Gaffney filed for child SSID benefits on April 14, 2015, alleging disability beginning on April 10, 2015. (Tr. 154–164).

### B. Summary of the ALJ's Decision

The ALJ must follow three steps in determining whether a child is disabled. *See* 20 C.F.R. §§ 416.902(c), 416.924. At step one, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Substantial gainful activity is paid work that requires significant physical or mental activity. *See* 20 C.F.R. § 416.910. If the child is not engaged in substantial gainful activity, the ALJ next determines, at step two, whether the child has an impairment or combination of impairments that cause marked or severe functional limitations;

can be expected to cause death; or has lasted or can be expected to last for a period of at least twelve months. *See* 20 C.F.R. §§ 416.906, 416.924(c). If the child does not have a severe medically determinable impairment, then, at step three, the ALJ determines if the child's impairments meet, medically equal, or functionally equal an impairment listed in the Listings. *See* 20 C.F.R. §§ 416.911(b)(1), 416.924(d), 416.926a(a).

An impairment or combination of impairments "functionally equals" a listing if the impairment "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). These domains are intended to encapsulate all of what a child can do, and consist of the following: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The child has a marked limitation

> when [the child's] impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be seriously limited when [the child's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the child's] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

20 C.F.R. § 416.926a(e)(2)(i).

The child has an extreme limitation

> when [the child's] impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities. [The child's] day-to-day functioning may be very seriously limited when [the child's] impairment(s) limits only one activity or when the interactive and cumulative effects of [the child's] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating [the Commissioner] give[s] to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R § 416.926a(e)(3)(i).

The ALJ determined J.K. was a newborn/young infant and had not engaged in substantial gainful activity when Ms. Gaffney filed the application. (Tr. 13). After reviewing the record, the ALJ found J.K. to have the following severe impairments: hydrocephalus and macrocephaly, status post ventriculoperitoneal shunt placement, Dandy Walker malformation, status post tethering of spinal cord, asthma, gastroesophageal reflux disease, and developmental delays. (*Id.*). Despite these findings, the ALJ determined J.K. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). (Tr. 14–18).

The ALJ then concluded J.K. had these limitations in the six functional domains:

| DOMAIN: | LIMITATION: |
|---|---|
| Acquiring and Using Information | None |
| Attending and Completing Tasks | None |
| Interacting and Relating with Others | None |
| Moving About and Manipulating Objects | Marked |
| Caring for Yourself | None |
| Health and Physical Well-Being | Less than Marked |

(Tr. 18–24). Because J.K. did not have an extreme limitation in one domain or marked limitations in two domains, the ALJ found J.K. not disabled. (Tr. 24).

## III. STANDARD OF REVIEW

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether substantial evidence supports her findings, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* (citation

5

omitted). Instead, the court must view the evidence as a whole, considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations) (citation omitted).

## IV. ANALYSIS

Ms. Gaffney argues the court should remand the ALJ's decision for four reasons. (Doc. 17 at 11–37). First, Ms. Gaffney argues the ALJ erred by failing to properly weigh the medical evidence. (*Id.* at 11–13). Second, Ms. Gaffney argues the ALJ erred by failing to develop a full and fair record. (*Id.* at 20–23). Third, Ms. Gaffney argues the ALJ erred by failing to properly assess J.K.'s limitations in Domain 6.[2] (*Id.* at 27–29). Fourth, Ms. Gaffney argues the ALJ erred by finding her testimony inconsistent with the record.[3] (*Id.* at 34–35).

A. <u>Whether the ALJ erred in her evaluation of the medical opinions.</u>

As an initial matter, Ms. Gaffney argues the ALJ's statement that she considered "all of the relevant evidence" is inadequate because the ALJ must clearly state the weight given to each item in the record and the reasons for the decisions.

---

[2] Ms. Gaffney only challenges the ALJ's conclusion of less than marked for Domain 6 (health and physical well-being). Thus, Ms. Gaffney has waived any claim as to the other five functional domains. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that a legal claim not briefed is abandoned).

[3] Ms. Gaffney's arguments surrounding her testimony at the ALJ hearing are placed throughout the other sections in the Joint Memorandum. (Doc. 17). For conciseness, those arguments are addressed under subsection D of this Order.

6

(Doc. 17 at 12). The Commissioner argues the ALJ's language that she considered "all of the relevant evidence" meets the regulations requirements. (*Id.* at 13).

While the ALJ has a duty to make clear the weight accorded to the evidence and the reasons for the decision, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence" in the decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Therefore, with the ALJ referring to "all of the relevant evidence," providing a list of the evidence, and crafting a detailed decision, the court can determine whether the decision is supported by substantial evidence.

Ms. Gaffney argues the ALJ improperly considered medical opinions from several sources. (Doc. 17 at 11–13). Ms. Gaffney specifically addresses medical opinions from Drs. Christopher Gregg, Daniel Garcia, and state agency medical consultants, Drs. Gerald Sokol and David Guthman. (*Id.*).

The ALJ must state with particularity the weight given to different medical opinions and her reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). In determining the weight to afford a medical opinion, the ALJ considers many factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.967(c). For instance, the more evidence a medical source presents to support an opinion, the more weight that medical opinion should be afforded. §§ 404.1527(c)(3), 416.967(c)(3).

7

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240–41. The ALJ may reject any medical opinion if evidence supports a contrary finding, but the ALJ must still articulate reasons for assigning little weight. *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986).

The ALJ need not refer to every piece of evidence, provided her decision does not broadly reject a claim for Social Security benefits. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). Although it is unnecessary to refer to every piece of evidence, the ALJ must consider all available evidence and articulate the weight given to probative evidence. *Id.*; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, if failing to state or explain weight does not affect the ALJ's ultimate decision, it is harmless error and does not warrant remand. *Colon v. Colvin*, 660 Fed. App'x 867, 870 (11th Cir. 2016).

1. Dr. Gregg

Ms. Gaffney argues the ALJ did not properly weigh the opinion of Dr. Gregg. (Doc. 17 at 12). Ms. Gaffney asserts despite the ALJ discussing periodic treatment notes about J.K.'s shunt, the ALJ did not discuss the restrictions recommended by

8

Dr. Gregg. (*Id.*). Ms. Gaffney argues since the ALJ failed to state specifically the weight given to Dr. Gregg's opinion, the court would be unable to determine whether the ALJ's decision was based on substantial evidence. (*Id.*)

The Commissioner acknowledges the ALJ did not expressly discuss Dr. Gregg's opinion about avoiding products with magnets from J.K.'s shunt. (*Id.* at 15). The Commissioner asserts the lack of discussion does not warrant a remand because Ms. Gaffney has not shown that Dr. Gregg's opinion contradicts the ALJ's decision. (*Id.*). The Commissioner argues the ALJ detailed Dr. Gregg's treatment records showing J.K.'s favorable response to the medical procedure. (*Id.*). The Commissioner argues there is no reversible error because the ALJ's decision shows Dr. Gregg's treatment notes were considered, and Ms. Gaffney has not explained or identified any conflict between Dr. Gregg's opinion and the ALJ's decision. (*Id.*).

The ALJ did not reference Dr. Gregg's opinion that discussed what J.K. should avoid because of the shunt placement. (Tr. 1360). This lack of reference to one specific document is not a broad rejection of evidence that prevents the court from reviewing the ALJ's conclusion about J.K.'s disability from the shunt placement. *See Dyer*, 395 F.3d at 1211. Rather, the ALJ discussed Dr. Gregg's treatment records about the shunt placement and J.K.'s favorable response to the procedure. (Tr. 16).

Additionally, Ms. Gaffney simply states the ALJ did not weigh Dr. Gregg's opinion and provides no support that the opinion contradicts the ALJ's decision. (Doc. 17 at 12–13). The court does not automatically remand the ALJ's decision for failing to state weight given to evidence that does not conflict with the ALJ's findings.

9

*Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008). Dr. Gregg's opinion explained the type of procedure that J.K. received and provided recommendations of types of products to avoid since there was a magnet present from the procedure. (Tr. 1360). Dr. Gregg's recommendations do not contradict the ALJ's decision because the ALJ recognized and considered J.K.'s impairment from his shunt placement and his limitations. (Tr. 13). Ms. Gaffney also provided no arguments for how Dr. Gregg's opinion would have changed the outcome. (Doc. 17 at 12). Therefore, because the ALJ's ultimate decision is not affected by the failure to state what weight she gave to Dr. Gregg's opinion, it was harmless error.

    2.    Dr. Garcia

Ms. Gaffney argues the ALJ improperly weighed Dr. Garcia's opinion. (Doc. 17 at 12–13). Ms. Gaffney alleges Dr. Garcia's opinion provided contradictory evidence to the ALJ's finding that there was no evidence of extensive emergency room treatment. (*Id.*). Ms. Gaffney asserts Dr. Garcia's opinion shows J.K.'s condition was severe despite rigorous adherence to medicines that required many emergency room visits. (*Id.*).

The Commissioner argues substantial evidence supports the ALJ's decision to assign Dr. Garcia's opinion little weight. (*Id.* at 15). The Commissioner argues the ALJ gave little weight to Dr. Garcia's opinion because the opinion conflicted with the evidence showing J.K.'s asthma was well controlled with treatment and did not lead to emergency room visits or hospitalizations. (*Id.* at 15–16). The Commissioner asserts Dr. Garcia's opinion conflicted with his own treatment notes showing J.K.'s

10

asthma was well controlled with conservative treatment. (*Id.* at 18). The Commissioner therefore argues the ALJ properly accorded little weight to Dr. Garcia's opinion. (*Id.*).

Dr. Garcia opined J.K. experienced recurring exacerbations of asthma requiring frequent treatment and emergency room visits. (Tr. 1412). The ALJ gave little weight to Dr. Garcia's opinion because the opinion conflicted with evidence in the record showing J.K.'s asthma was well-controlled and did not cause frequent trips to the emergency room. (Tr. 16). Various trips for other acute illnesses to the emergency room show J.K.'s respiratory review as equal, clear breath sounds, and nonlabored and symmetrical respirations. (Tr. 240, 256, 477, 724, 894, 956, 1294). From the pediatrician visits, the medical records show J.K.'s health improved with conservative treatment for wheezing. (Tr. 387–392, 1100–1118). Substantial evidence supports the ALJ's determination to give little weight to Dr. Garcia's opinion.

### 3. *Drs. Sokol and Guttman*

Ms. Gaffney argues the ALJ improperly weighed the opinions of Drs. Sokol and Guthman. (*Id.* at 13). Ms. Gaffney asserts the ALJ picked certain medical opinions to support her decision while disregarding contrary evidence. (*Id.*).

The Commissioner argues substantial evidence supports the ALJ's decision to give the state agency opinions of Drs. Sokol and Guthman significant weight. (*Id.* at 19). The Commissioner asserts the ALJ properly gave significant weight to the state agency opinions because they were consistent with the medical evidence that both

11

doctors reviewed before giving their opinion. (*Id.*). The Commissioner argues the state agency opinions explained all J.K.'s various diagnoses but noted there was consistent improvement with treatment. (*Id.*).

Both Drs. Sokol and Guthman reviewed the evidence and recognized J.K. had medically determinable impairments but those impairments were not disabling. (Tr. 67–74, 77–86). The ALJ gave significant weight to these opinions because they are supported by the record. (Tr. 18). Although J.K. had various diagnoses, the evidence also shows J.K. progressively improved by meeting his goals with treatment and therapy. (Tr. 435, 438, 456, 880, 902). Drs. Sokol and Guthman's opinions are consistent with the record and account for J.K.'s impairments. However, they also considered his improvement with treatment. Therefore, the ALJ properly weighed the medical evidence.

B.     Whether the ALJ failed to develop a full and fair record.

Ms. Gaffney argues the ALJ failed to investigate facts required when developing a full and fair record. (Doc. 23 at 20). Ms. Gaffney alleges the ALJ did not inquire into J.K.'s medication side effects. (*Id.* at 21). Ms. Gaffney argues the ALJ has a duty to investigate medication side effects that contribute to disability even if the ALJ discredits the testimony about the side effects. (*Id.*). Ms. Gaffney asserts the ALJ should have contacted the prescribing physicians about J.K.'s medications and the side effects. (*Id.* at 22). Ms. Gaffney states the court should remand the case to allow the ALJ to evaluate the impact of the medications' side effects on the

12

impairments as required by the court in *Goberman v. Apfel*, 2:99cv316FTM26DNF, 2001 WL 267209 (M.D. Fla. Mar. 12, 2001).[4]

The Commissioner argues the ALJ satisfied her duty to develop a full and fair record. (Doc. 17 at 23). The Commissioner asserts the ALJ considered all the evidence, including medical opinions, testimony, and treatment history, including J.K.'s medications before determining no additional evidence was necessary to decide the claim. (*Id.*). The Commissioner argues that, although the ALJ has a duty to develop a full and fair record, the claimant bears the burden for providing evidence in support of his claim. (*Id.* at 24).

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Before determining a claimant is not disabled, an ALJ is responsible for developing a complete medical history and will consider any descriptions or observations of claimant's limitations from his impairments. *See* 20 C.F.R. § 416.945(a)(3). Remand for further development of the record is appropriate when the record contains evidentiary gaps, which lead to unfairness or clear prejudice. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation and citation omitted). The ALJ need not obtain additional medical evidence if the record already contains enough evidence for the ALJ to issue a

---

[4] Ms. Gaffney's reliance on *Goberman* is misplaced. In *Goberman*, the ALJ failed to consider the combined effects of all impairments, both severe and non-severe. 2001 WL 267209 at *4. Here, the ALJ identified several severe impairments along with non-severe impairments and considered them together along with Ms. Gaffney's testimony about the side effects from medications. (Tr. 13–18). *Goberman* focuses on an adult's capacity to work, which is not relevant for J.K. as he is a young infant.

13

decision. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *see also* 20 C.F.R. § 404.1520b(b)(2) (stating the Commissioner may request claimant to undergo additional medical examinations if the record is insufficient).

The ALJ did not err by failing to recontact J.K.'s treating physicians for more information on his medications' side effects. Substantial evidence supported the ALJ's determination that J.K. is not disabled, and the ALJ clearly articulated the evidence she relied on with appropriate citations to the supporting evidence in the record. (Tr. 13–24); *see Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017) ("[I]t is readily apparent from the ALJ's exhaustive discussion of [the plaintiff's] various impairments and their functional limitations that the ALJ considered the combined effects of her impairments."). The claimant carries the burden of proving disability by producing evidence to support the claim and cannot shift that burden when all the evidence available is before the ALJ's determination. *See* 20 C.F.R. § 416.912(a). The ALJ specifically asked Ms. Gaffney if there were any outstanding medical records, and Ms. Gaffney explained that all the records were there. (Tr. 61). Ms. Gaffney does not provide specific instances of disabling medication side effects, but only suggests recontacting treating sources might support J.K.'s disability claim. (Doc. 17 at 20–22). Since the ALJ reviewed all of J.K.'s medical records and they provided extensive documentation about his impairments, the ALJ properly determined no additional evidence was necessary.

C. <u>Whether the ALJ properly assessed J.K.'s limitations in Domain 6.</u>

Ms. Gaffney argues the ALJ did not properly consider the difficulties J.K. has in Domain 6. (Doc. 17 at 28). Ms. Gaffney argues the ALJ's conclusion of less than marked limitations in Domain 6 is not supported by the overall evidence. (*Id.*). Ms. Gaffney asserts the ALJ did not consider the combined effect and impact of the individual impairments. (*Id.*). Ms. Gaffney argues the ALJ improperly reasoned J.K.'s emergency room visits were for acute illnesses even though the visits were for reoccurring symptoms like fever and vomiting. (*Id.*).

The Commissioner argues the ALJ properly considered all six domains and substantial evidence proves J.K.'s condition does not functionally equal a listing. (*Id.* at 29). The Commissioner asserts the ALJ's role is to determine the degree of limitation by the claimant. (*Id.* at 29–30). The Commissioner argues the ALJ considered J.K.'s frequent emergency room visits but reasoned those visits resulted from acute viruses/illnesses that resolved promptly with treatment. (*Id.* at 31). The Commissioner argues that, although there were frequent visits to the emergency room, J.K. responded well to the treatment and the number of visits were decreasing. (*Id.* at 34).

For the domain of health and physical well-being (Domain 6), the ALJ must examine the cumulative effects of physical and mental impairments and any associated treatments or therapies on the child's functioning not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. §

416.926a(l). For the domain of health and physical well-being, the ALJ may also consider a child to have a marked limitation in this domain if:

> you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv). The ALJ can find a marked limitation if the *overall effect* of a claimant's episodes is equivalent in severity. *See id.*

The ALJ found J.K. had less than marked limitation in the domain of health and physical well-being. (Tr. 24). The ALJ addressed J.K.'s many emergency room and physician visits in determining if there is a marked limitation. (*Id.*); *see* 20 C.F.R. § 416.926a(e)(2)(iv). These emergency room visits were for illnesses such as fever, vomiting, congestion, and fatigue, and each time the hospital discharged him the same day. (Tr. 243, 649, 669, 726, 1083). The emergency room visits do not meet the definition of frequent provided in the regulations because even though there were many visits, the duration of J.K.'s illnesses did not last longer than two weeks, and often J.K. significantly improved with treatment within a few days of his visits. (Tr. 389, 410, 416–417). Even when J.K. spent four days in the hospital for a rhinovirus infection, his follow up with his pediatrician showed significant improvement with no notes about any remaining infection. (Tr. 427–428, 1118–1119). Notably, the

primary care visits significantly decreased to mainly required wellness checks as J.K. responded to treatment. (Tr. 1085–1104). Substantial evidence supports the ALJ's decision that J.K. has less than marked limitation in Domain 6, health and physical well-being.

D. <u>Whether the ALJ properly found Ms. Gaffney's testimony inconsistent with the record.</u>

Ms. Gaffney argues the ALJ improperly considered Ms. Gaffney's extensive testimony by reducing the testimony to a short-summarized paragraph. (Doc. 17 at 12). Ms. Gaffney alleges the ALJ disregarded her testimony about the severity of J.K.'s complaints and impairments. (*Id.* at 35). Ms. Gaffney asserts the ALJ failed to state good cause for discrediting Ms. Gaffney's allegations of severe limitations. (*Id.*).

The Commissioner argues the ALJ properly considered Ms. Gaffney's subjective statements in assessing J.K.'s functioning. (*Id.* at 35). The Commissioner alleges the ALJ discussed Ms. Gaffney's testimony in detail and how the testimony was inconsistent with the record. (*Id.*). The Commissioner argues Ms. Gaffney failed to meet the burden of providing evidence to support the allegations of disability. (*Id.* at 36).

To establish disability based on testimony about pain and other symptoms, the claimant must show the following: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.

17

2002) (citation omitted). If the ALJ rejects subjective testimony, she must provide adequate reasons for doing so. *Id.* (citation omitted). The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

The ALJ considered all of J.K.'s symptoms included in Ms. Gaffney's testimony. (Tr. 15). The ALJ addressed Ms. Gaffney's testimony, but found her statements about the intensity, persistence, and limiting effects of the symptoms conflicted with the record. (*Id.*). For example, Ms. Gaffney testified J.K.'s medicine caused fatigue. (Tr. 40). However, the medical records demonstrate J.K. was generally alert and active. (Tr. 387, 389, 391, 394, 398, 400–401, 404, 407, 410, 413, 1090, 1093, 1097, 1104, 1110, 1112, 1114, 1116, 1118). Additionally, Ms. Gaffney testified J.K. was unable to gain weight (Tr. 39), but none of his wellness checks documented any findings related to weight. (Tr. 387, 389, 391, 394, 398, 404, 407, 410, 413, 416, 419, 422, 424, 959, 1085, 1088, 1090, 1093, 1097, 1104, 1110, 1112, 1114, 1116, 1118). When there is a lack of medical evidence confirming the severity of subjective symptoms, the ALJ can give less weight to testimony about the symptoms. *See Brown v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 865 (11th Cir. 2011). Therefore, substantial evidence supports the ALJ's decision to discredit Ms. Gaffney's testimony.

## V. CONCLUSION

The Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court must enter final judgment for the Commissioner consistent with 42 U.S.C. Sections 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on September 6, 2019.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge